THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

I. V. I.

    *Petitioner*,

v.

Nikita Baker, *et al*.

    *Respondents*.

Case No.: 1:25-cv-01572

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR STAY AND TEMPORARY RESTRAINING ORDER**

Comes now the Petitioner, by and through undersigned counsel, and submits the aforesaid Memorandum of Law, stating as follows:

**I.**    **INTRODUCTION**

Petitioner is an immigrant who was previously subject to removal proceedings and was granted withholding of removal to Honduras pursuant to § 241(b)(3)(A) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1231(b)(3)(A). On May 14, 2025, Petitioner was detained by agents of U.S. Immigration and Customs Enforcement ("ICE") in Baltimore City, Maryland ("Baltimore") and informed that he would be removed to Mexico. On May 14, 2025, while Petitioner was still detained in Baltimore, Petitioner filed an application for a writ of habeas corpus ("Application") which challenged his detention and proposed removal on the basis that these actions violated the Due Process Clause of the Fifth Amendment to the Constitution. Petitioner respectfully moves this Court for an order staying his proposed removal and temporarily restraining respondents from effecting any removal of Petitioner to Mexico or any other third country until this Court has been satisfied that Petitioner has received all process due Petitioner under the Constitution. This Court should grant Petitioner's motion ("Motion")

because, prior to being removed to any third country, Petitioner is due certain process under the Constitution including an opportunity to challenge his removal to any country where Petitioner fears he may be tortured or persecuted. *See id.*; *see also* 8 C.F.R. § 208.16-18, 1208.16-18.

## II.  RELEVANT FACTS

Petitioner is a resident of Howard County, Maryland who is challenging his May 14, 2025, detention by ICE. Petitioner was previously subject to immigration removal proceedings before a judge ("Immigration Judge") of the U.S. Department of Justice's ("DOJ") Executive Office of Immigration Review ("Immigration Court").

On November 4, 2024, Petitioner was granted withholding of removal to Honduras pursuant to 8 U.S.C. § 1231(b)(3)(A) by an Immigration Judge. Withholding of removal is an administrative order preventing the Department of Homeland Security ("DHS") from removing Petitioner from the United States to a country of removal designated by the Immigration Court. On information and belief, prior to granting Petitioner withholding of removal, the Immigration Judge only designated Honduras as the sole country of removal and no third country of removal was ever designated by the Immigration Judge.

An immigrant is eligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) only if the immigrant can establish that his or her life or freedom would be threatened in their home country on account of the immigrant's race, religion, nationality, political opinion, or membership in a particular social group. *See* 8 U.S.C. § 1231(b)(3)(A). Petitioner fled Honduras because he and his family suffered death threats and murder attempts at the hands of members of transnational gangs, including MS-13. Petitioner, alongside his wife and three of their children, were once fired upon by members of the gang. Because of this violence, and

2

because an Immigration Judge found that Petitioner's life would be threatened if returned to Honduras, Petitioner was granted withholding of removal to Honduras.

Pursuant to the withholding of removal granted by the Immigration Court, Petitioner had a responsibility to check-in with ICE on a regular basis. On May 14, 2025, while attending a regular ICE check-in in Baltimore, Petitioner was detained by agents employed by ICE and informed that he would be removed to Mexico.

ICE agents attempted to serve Petitioner with a document in Spanish notifying Petitioner of his intended removal to Mexico and to obtain his signature on the same. Petitioner refused to receive or sign the document. Petitioner subsequently informed ICE agents that he feared being removed to Mexico. Petitioner was only told that he should contact a lawyer and has been provided no credible fear interview by an asylum officer nor referred to an immigration judge for withholding-only proceedings.

On May 14, 2025, while Petitioner was still detained in Baltimore, Petitioner applied to this Court for a writ of habeas corpus in order to challenge the legality of his detention and pending removal to Mexico. *See* ECF 1; *see also* Exhibit A ("Declaration of Roberto E. Alejandro") *and* Exhibit B ("Sworn Declaration of Petitioner's Spouse with English Translation"). Despite the Petitioner filing an application for writ of habeas corpus on May 14, 2025, and DHS having notice of the same by May 16, 2025, DHS nonetheless transferred Petitioner to an immigration detention center in Louisiana on or about May 18, 2025, with the intention of effecting Petitioner's removal to Mexico.

## III. ANALYSIS

### A. This Court Retains Jurisdiction over Petitioner's Application for a Writ of Habeas Corpus and Has the Authority to Issue a Stay and Temporary Restraining Order under the All Writs Act.

Petitioner's Motion should be granted because this Court has jurisdiction over Petitioner's Application for Writ of Habeas Corpus. Petitioner's Motion should further be granted because this Court possesses authority under the All Writs Act to issue a stay and injunctive relief regarding Petitioner's potential removal by Respondents.

Petitioner's application for a writ of habeas corpus was filed on May 14, 2025, when Petitioner was still being held in Baltimore by ICE. *See id*. Territorial jurisdiction over an application for a writ of habeas corpus is based on the location of the custodian of the person petitioning for the writ at the time the application is filed. *See United States v. Moussaoui*, 365 F.3d 292, 300 (4th Cir. 2004) ("In determining whether a district court possesses the power to serve a writ of habeas corpus, the critical principle is that the writ is served not upon the prisoner, but upon the custodian." *Citing Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 494-95, 35 L. Ed. 2d 443, 93 S. Ct. 1123 (1973)). A person must file any application for a writ of habeas corpus in the location where they are confined and name their immediate custodian:

> When a petitioner is physically detained, the custodian generally is the warden of the facility where the petitioner is confined. *Padilla*, 542 U.S. at 435. A habeas petitioner who is physically confined must name this "immediate custodian" as the habeas respondent, and must file the habeas petition in the "district of confinement." *Id*. at 446-47. In that circumstance, the "district of confinement" necessarily is the location of both the habeas petitioner and the immediate custodian.

*Kanai v. McHugh*, 638 F.3d 251, 255 (4th Cir. 2011). Petitioner filed his Application in the District of Maryland because he was being held at an ICE facility in Baltimore. Petitioner named as a respondent Nikita Baker because she, as Interim Director of the Baltimore Field

4

Office, was the person who oversaw the ICE facility where Petitioner was in custody at the time his Application was filed. The District of Maryland was therefore the appropriate district of confinement for purposes of Petitioner's Application.

The question of a Court's jurisdiction over an application for a writ of habeas corpus is established at the time of filing. The Court's jurisdiction is not altered by subsequent events, such as transfer of a petitioner out of the jurisdiction, so long as the custodian remains in the jurisdiction. *See Ex parte Mitsuye Endo*, 323 U.S. 283, 306, 65 S. Ct. 208, 220 (1944) ("the District Court acquired jurisdiction in this case and that the removal of Mitsuye Endo did not cause it to lose jurisdiction where a person in whose custody she is remains within the district."); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 411 (2004) *and Ozturk v. Trump*, Civ. No. 25-10695, 2025 WL 1009445, at *6 (D. Mass. Apr. 4, 2025).[1] Additionally, as the Respondents had notice of Petitioner's Application prior to transferring him to Louisiana, Petitioner never should have been transferred out of the District of Maryland. *See* Fed. R. App. P. 23 ("Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule."). Accordingly, jurisdiction over Petitioner's Application is properly vested in this Court.

Pursuant to the All Writs Act, this Court has authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also* 28 U.S.C. § 2241 *et seq*. Additionally, the Supreme Court

---

[1] Indeed, because jurisdiction is determined at the time of filing, a Court retains jurisdiction over an application for habeas corpus even when the petitioner is released from custody. *See McKinney v. Stahl*, 538 F.2d 324, 324 (4th Cir. 1976) ("Once federal jurisdiction has attached, it is not defeated by the release of the petitioner prior to completion of the proceedings"); *and Leonard v. Hammond*, 804 F.2d 838, 842 (4th Cir. 1986) ("The federal habeas corpus statute requires that plaintiffs must be "in custody" when the application for habeas is filed. . . . Plaintiffs' subsequent releases have no effect on that jurisdiction." (Internal citations omitted)).

5

has held that federal courts possess "a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (*citing Arrow Transp. Co. v. Southern R. Co.*, 372 U.S. 658, 671, n. 22 (1963); *Scripps-Howard Radio, Inc. v. Federal Communications Comm'n*, 316 U.S. 4 (1942); *West India Fruit & S. S. Co. v. Seatrain Lines, Inc.*, 170 F.2d 775 (C. A. 2d Cir. 1948); *and Board of Governors v. Transamerica Corp.*, 184 F.2d 311 (C. A. 9th [\*\*\*\*13]  Cir.), cert. denied, 340 U.S. 883 (1950)); *see also* Standing Order 2025-01, *In re Petitions for Writs of Habeas Corpus—Alien Detainee*, No. 165 Misc. No. 00-308 (D. Md. 2025).  Accordingly, this Court has jurisdiction over this matter and possesses authority to issue a stay of Petitioner's intended removal to Mexico by Respondents as well to temporarily enjoin Respondents from executing any removal of Petitioner pending the resolution of all legal process due Petitioner under the Constitution.

For all the aforesaid reasons, Petitioner's Motion for Stay and Temporary Restraining Order should be granted.

### B.     Petitioner Should Be Granted a Temporary Restraining Order because He Meets All Requirement for the Same.

Petitioner's Motion should be granted because he meets the requirements for a temporary restraining order and the same is necessary to protect Petitioner from irreparable harm.  The relevant factors to be analyzed by a court considering the request of a party to issue temporary and preliminary injunctive relief are whether (1) the party is likely to succeed on the merits, (2) the party is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1. Petitioner Is Likely to Succeed on the Merits of His Claim that His Due Process Rights Have Been Violated.

Petitioner's motion for a temporary restraining order should be granted because Petitioner is likely to succeed on the merits of his claim, advanced in his application for a writ of habeas corpus, that his due process rights have been violated by Respondents. Petitioner has sought to challenge his detention and proposed removal to a third country on the basis that these actions violate the Fifth Amendment's due process clause. The Fifth Amendment guarantees that "No person shall . . . be deprived of life, liberty, or property, without due process of law." USCS Const. Amend. 5. The Supreme Court has stated that "It is well established that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (*citing Reno v. Flores*, 507 U. S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993)). Accordingly, Petitioner must be afforded his rights under the law pursuant to the Due Process Clause of the Fifth Amendment.

To begin, it is not clear that Respondents' attempts to remove Petitioner to Mexico are unlawful as *ultra vires* acts. A government official's action is *ultra vires* when the government official "lack[s] any authority to perform the act" and is acting "entirely "beyond the scope of his statutory authority."" *Stewart v. Nottoway Cty.*, 684 F. Supp. 3d 467, 479 (E.D. Va. 2023) (internal citations omitted).

It is true that the Attorney General is authorized to remove an immigrant who is not an 'arriving alien' to a potential third country under INA 241(b)(2). *See* 8 U.S.C. § 1231(b)(2)(A), (C)-(E); *see also* 8 U.S.C. § 1231(b)(1). However, the regulations implementing INA 241(b)(2) explicitly empower an immigration judge, and not DHS or ICE, to designate any third country of removal for purposes of removing an immigrant under INA 241(b)(2):

7

> With respect to an arriving alien covered by section 241(b)(1) of the Act, the country, or countries in the alternative, to which the alien may be removed will be determined pursuant to section 241(b)(1) of the Act. In any other case, the immigration judge shall notify the respondent that if he or she is finally ordered removed, the country of removal will in the first instance be the country designated by the respondent, except as otherwise provided under section 241(b)(2) of the Act, and shall afford him or her an opportunity then and there to make such designation. **The immigration judge shall also identify for the record a country, or countries in the alternative, to which the alien's removal may be made pursuant to section 241(b)(2) of the Act if the country of the alien's designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country**.

8 C.F.R. 1240.10(f) (emphasis added). Not only do the regulations implementing INA 241(b)(2) exclusively authorize an immigration judge to designate potential third countries of removal, but INA 240 makes a proceeding before an immigrant judge the "exclusive procedure for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229a(a)(3).

There is no indication that any immigration judge has ever designated Mexico as a potential third country of removal for Petitioner. In light of this, ICE's unilateral designation of Mexico as a potential country of removal for Petitioner would seem to have no clear authorization under the law. Accordingly, ICE's unilateral designation is *ultra vires* and a violation of due process, since the law establishes proceedings before an immigration judge as the sole locus of designating countries for removal.

However, even if ICE's designation of Mexico as a country of removal for Petitioner is lawful, Petitioner may nonetheless not be removed to a country where he may be tortured or where his life or freedom would be threatened based on a protected ground (that is, whether he may be persecuted). *See* 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. § 208.16-18, 1208.16-18. There are established procedures under the law that prevent immediate removal when an

immigrant has expressed fear of being removed to a particular designated country because they might be tortured or persecuted. *See* 8 C.F.R. § 208.31 and 1208.31. When an immigrant has expressed fear of being removed to a given country, that immigrant is granted an interview before an appropriate officer to determine whether the immigrant has a reasonable fear of torture or persecution. *See* 8 C.F.R. § 208.31(b)-(c), 1208.31(a). If the immigrant is determined to have a reasonable fear, the immigrant is to be referred to an immigration judge for a final determination of whether any proposed removal must be withheld. *See* 8 C.F.R. § 208.31(e), 1208.31(e). If the immigrant is not determined to have a reasonable fear, the immigrant must be given an opportunity to request a review of the negative determination by an immigration judge. *See* 8 C.F.R. § 208.31(f)-(g), 1208.31(f)-(g).

In the present matter, Petitioner has expressed to ICE agents that detained him that he fears being returned to Mexico. *See* Exhibit A ("Declaration of Roberto E. Alejandro") at para. 17-18. Despite this, Petitioner has been given no interview to assess whether Petitioner has a reasonable fear of being removed to Mexico, nor has Petitioner been referred to an immigration judge or given an opportunity to request review by an immigration judge. Accordingly, Petitioner has been denied the process he is due under the law and he is likely to prevail on the merits of his claim that his due process rights have been violated.

### 2. Petitioner Is Likely to Suffer Irreparable Harm if Respondents Are Not Enjoined from Effecting His Removal.

Petitioner's motion for a temporary restraining order should be granted because Petitioner is likely to suffer irreparable harm if he is not granted a temporary restraining order. Petitioner was previously granted withholding of removal to Honduras because he faced likely violence at the hands of gang members, including members of MS-13. MS-13 is a transnational gang that operates in Mexico in addition to Honduras and Petitioner would be vulnerable to the same

violence in Mexico that he faces in Honduras. Such violence would be clear irreparable harm to Petitioner. Additionally, Petitioner has no lawful status in Mexico and would not be able to work or support himself if removed to that country. In Mexico, Petitioner would also be forcibly and indefinitely separated from his wife and children, who are in Maryland. All the aforesaid clearly constitute irreparable harm that would be suffered by Petitioner if removed to Mexico.

### 3. Petitioner's Motion Should Be Granted because the Balance of Equities and Public Interest Weigh in His Favor.

Petitioner's Motion for a temporary restraining order should be granted because the balance of equities and public interest weigh in his favor. In considering a request for a temporary restraining order, the question of the balance of equities and the public interest merge when it is the government, as here, that opposes the restraining order. *See Roe v. United States DOD*, 947 F.3d 207, 230 (4th Cir. 2020) (*citing Winter*, 555 U.S. at 20; *and Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009)). As the U.S. Supreme Court has held, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436. As noted *supra*, Petitioner would face substantial and irreparable harm if removed to Mexico. Accordingly, the public interest lies in Respondents being enjoined from effecting any removal of Petitioner until it can be determined whether Petitioner would face substantial harm if returned to Mexico. The balance of equities and public interest therefore weigh in favor of granting Petitioner a temporary restraining order that enjoins DHS/ICE from effecting any removal of Petitioner until this Court is satisfied that Petitioner has received all process to which he is entitled under the law. Petitioner thus meets all the requirements for a temporary restraining order.

For all the aforesaid reasons, Petitioner's Motion for Stay and Temporary Restraining Order should be granted.

## IV. CONCLUSION

For all the aforesaid reasons, Petitioner's Motion for Stay and Temporary Restraining Order should be granted.

Dated: May 23, 2025                    Respectfully submitted,

Luminus Network, Inc.

/s/ *Roberto E. Alejandro*
Roberto E. Alejandro (Bar No. 21215)
10400 Little Patuxent Parkway, Ste 450
Columbia, MD 21044
T: (410) 992-1923
ralejandro@beluminus.org
*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2025, I caused a copy of the foregoing to be filed via the Court's electronic filing system, which makes service on all parties so entitled.

/s/ *Roberto E. Alejandro*
Roberto E. Alejandro