IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| I.V.I., | * | |
| Petitioner, | * | |
| v. | * | Civ. No. JKB-25-1572 |
| NIKITA BAKER, *et al.*, | * | |
| Respondents. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM AND ORDER**

Before the Court is Petitioner I.V.I.'s Petition for a Writ of Habeas Corpus. (ECF No. 1.) For the reasons below, the Court will order additional briefing from the parties, to be followed by a hearing on June 24, 2025, concerning the legality of Petitioner's detention.

The record indicates that Petitioner is an alien who, in November 2018, arrived in the United States illegally. (ECF No. 14-1 at 1.) In November 2024, an immigration judge deemed him removable to Honduras, (*id.* at 2), but then ordered a withholding of removal to the same, (*id.*; ECF No. 1 ¶ 8). No other country has been designated by an immigration judge as a country of removal. (ECF No. 10-1 at 2.)

On May 14, 2025, during his annual check-in, Petitioner was detained by Immigration and Customs Enforcement. (ECF No. 1 ¶ 11.) He was then served with a notice of his impending removal to Mexico. (ECF No. 18-1.) Since that time, he has been held in ICE custody—first in Maryland, now in Louisiana. (*See* ECF No. 1 ¶ 11; ECF No. 14-1 at 2.) He alleges that he filed his habeas petition before he was moved out of this District. (ECF No. 1 ¶ 15.)

The Court has denied Petitioner's various requests for emergency relief from deportation to Mexico (or any other nondesignated country), on the ground that those requests were duplicative

of relief that the District of Massachusetts had already granted. (*See* ECF No. 9 at 1; ECF No. 17 at 2–4.) But the underlying habeas petition implicates a fundamentally different sort of claim. Rather than seeking relief from removal alone, a proper habeas petition attacks, at least in part, the power of the Government to maintain an alien's detention. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004); *Trump v. J.G.G.*, 604 U.S. ---, 145 S. Ct. 1003, 1005 (2025); *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 583–87 (D. Md. 2020).

At a hearing on Petitioner's second request for emergency relief, Petitioner's counsel raised two arguments, each not raised in the initial petition, about the legality of Petitioner's detention. (ECF No. 17 at 4.) First, he argued the detention was unlawful because Petitioner had not been given or received a warrant of removal, known as a "Form I-205." (*Id.*) Second, he argued that an order of withholding of removal to a specific country (here, Honduras) divested Respondents of their power to detain Petitioner at all, absent an immigration judge's designation of some other country as the destination. (ECF No. 17 at 4.) The Court ordered additional briefing on these issues. (*See id.* at 5–6.)

In his brief, Petitioner concedes that an order of withholding of removal does not affect the Respondents' authority to detain him under a valid order of removal. (ECF No. 18 at 1 n.1.) And he acknowledges that Respondents produced a Form I-205 that was purportedly served upon Petitioner when he was first detained. (ECF No. 19 at 4 (citing ECF No. 19-2).)[1] Even so, he contends there is no evidence this warrant was ever *actually* served, (ECF No. 19 at 4), and that even if it had been, it (and thus the detention it purports to authorize) is legally invalid because the warrant was executed outside the so-called "removal period," (*id.* at 4–5). The removal period is

---

[1] Petitioner submitted his additional briefing the day before the deadline. (ECF No. 19-1 ¶¶ 2–3.) After Petitioner filed his brief, Respondents produced the Form I-205 to Petitioner's counsel. (*Id.* ¶ 4.) Petitioner then submitted supplemental briefing, together with a motion for leave to file the same. (ECF Nos. 19, 19-3.) Respondents have not stated their position on the motion. (*See* ECF No. 19-1 ¶ 9; ECF No. 20 at 1–3.) It will be granted.

a ninety-day window that begins, in relevant part, when an order of removal becomes final. (*See id.* at 5 (citing 8 U.S.C. § 1231(a)(1)(B).) Petitioner argues his removal order became final on December 4, 2024. (*See id.* at 4–5.) In his view, that gave Respondents until March 4, 2025, to detain and remove him without having to comply with additional procedures. (*See id.* at 5 (citing 8 C.F.R. § 241.4(g)(1)(ii)).) Petitioner now also argues that his detention is unlawful because he has not undergone a "custody review," an analysis of whether his ongoing detention is needed. (*Id.* at 5–6 (citing 8 C.F.R. § 241.4(c)–(k)).)[2]

The Government's briefing does not fully respond to Petitioner's arguments. For example, rather than addressing Petitioner's argument that the removal period has ended, Respondents simply cite 8 U.S.C. § 1231(a)(2)(A) for the proposition that, "[d]uring the removal period, the Attorney General shall detain the alien." (ECF No. 20 at 2.) They also do not grapple with the very next subsection, which provides that "[i]f the alien does not leave or is not removed *within the removal period*, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3) (emphasis added). Per the statute, those regulations must include requirements for the alien "to appear before an immigration officer periodically," *id.* § 1231(a)(3)(A), and "to obey reasonable written restrictions on [his] conduct or activities," *id.* § 1231(a)(3)(D). All of this appears to contemplate that, after the expiration of the removal period, an alien will not be detained. *See id.* § 1231(a)(3) (titled "Supervision after 90-day period"); *see also id.* § 1231(a)(1)(C) (explaining under what circumstances "[t]he removal period shall be extended beyond a period of 90 days and the alien *may remain in detention* during such extended period" (emphasis added)). And if that is the case, the question of the duration of the removal period—and the effect of its lapse—is of serious consequence.

---

[2] These arguments—also not raised in the initial habeas petition—are arguments the Court has jurisdiction to consider. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[Section] 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

3

Similarly, Respondents cite 8 C.F.R. § 241.4(b)(3), along with 8 U.S.C. § 1231(a)(2)(A), *supra*, for the proposition that Respondents "have the statutory and regulatory authority to detain the Petitioner . . . while he is being processed for removal to a third country." (ECF No. 20 at 2.) But this regulatory provision appears only to provide what Petitioner has already conceded: that a withholding of removal to a specific country does not disrupt otherwise extant authority to detain or remove an alien elsewhere. *See* 8 C.F.R. § 241.4(b)(3). The key word is "extant"—and Petitioner raises a colorable argument about whether, in light of the timing of his removal period, Respondents have done what they need to do to assert and maintain their authority.

The Court does not yet make any final determinations on the above issues. But if it is to consider properly the petition before it—especially given the byzantine nature of immigration law—it requires the benefit of robust briefing from both parties. Until then, the Court can grant neither party the relief it seeks, whether that be Petitioner's release from custody or dismissal of the petition.

Petitioner has now had ample opportunity to identify and explain his claims regarding the legality of his detention. Respondents will therefore be directed to brief the following issues:

1. On what basis can the Government detain an alien after the removal period has expired? Is there a difference between a situation in which an alien is first detained *within* the removal period (which then expires prior to removal) and one in which an alien is first detained *after* the removal period?

2. When did Petitioner's removal period begin? If it ended, when?

3. Assuming Petitioner's removal period has expired, on what authority can Respondents justify his detention? On what authority (and for how long) can they *maintain* his detention?

4. Under what circumstances must the Government conduct a custody review of a

4

detained alien? Who—the Government or the alien—initiates such a review?

5. Has Petitioner received a custody review?

Petitioner will have one week to respond to the Respondents' briefing. No new arguments for release will be permitted. Shortly after Petitioner's response is due, the Court will hold a hearing on those and any other pending issues.

To preserve its jurisdiction to consider and finally resolve these issues, the All Writs Act stay the Court issued on May 21, 2025, will remain in effect. (ECF No. 9 at 2–3 (citing 28 U.S.C. § 1651); *see also* ECF No. 17 at 5–6.) During the pendency of the stay, Respondents are not to remove Petitioner from the United States. The stay will remain in force until further order of the Court.

Accordingly, it is ORDERED that:

1. On or before June 12, 2025, Respondents SHALL FILE supplemental briefing addressing the questions set out above.

2. On or before June 19, 2025, Petitioner SHALL FILE his response to Respondents' briefing. No new arguments are permitted.

3. A HEARING on the legality of Petitioner's detention is set in for 12:30 p.m. on June 24, 2025, in Courtroom 5A, United States Courthouse, Baltimore, Maryland.

4. Until further order of this Court permits it, Respondents SHALL NOT REMOVE Petitioner from the United States.

5. Petitioner's Motion for Leave to File a Supplemental Brief, (ECF No. 19), is GRANTED *nunc pro tunc*.

5

DATED this 2 day of June, 2025.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge

6