IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| I.V.I., | * |
| Petitioner, | * |
| v. | * |
| NIKITA BAKER, *et al.*, | * |
| Respondents. | * |

Civ. No. JKB-25-1572

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

Before the Court is Petitioner I.V.I.'s Petition for a Writ of Habeas Corpus. (ECF No. 1.) The petition has undergone multiple rounds of briefing, (*see* ECF Nos. 7-1, 10-1, 14, 19-1, 20, 22–23), and was the subject of a hearing held on June 24, 2025. The Government seeks to dismiss the petition or, in the alternative, to transfer it to the Eastern District of Louisiana. (ECF No. 22 at 13.)

For the reasons stated in open court and elaborated below, the petition will be dismissed without prejudice. The stay of Petitioner's removal from the United States—first entered under the All Writs Act, 28 U.S.C. § 1651, on May 21, 2025, (ECF No. 9 at 2)—will be vacated. To preserve a realistic opportunity for Petitioner to appeal this ruling, should he choose to do so, and to protect any resulting jurisdiction in the Court of Appeals, this ruling will be stayed for one week. During that time, Petitioner shall not be removed from the United States. The Government's request to transfer the case will be denied.

## I.    BACKGROUND

The record indicates that Petitioner is an alien who, in November 2018, arrived in the United States illegally. (ECF No. 14-1 at 1.) In November 2024, an immigration judge deemed

him removable to Honduras, (*id.* at 2), but then ordered a withholding of removal to the same (*id.*; ECF No. 1 ¶ 8). No other country has been designated by an immigration judge as a country of removal. (ECF No. 10-1 at 2.)

On May 14, 2025, during his annual check-in, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). (ECF No. 1 ¶ 11.) He was then served with notice of revocation of his release, written in English, (ECF No. 22-1), as well as a notice of his impending removal to Mexico, written in Spanish, (ECF No. 18-1). ICE also issued a warrant of removal/deportation, known as a Form I-205, though it is unclear if this document, also written in English, was ever served upon Petitioner. (ECF No. 20-2; *see* ECF No. 21 at 2.) Petitioner's counsel has indicated that Petitioner does not understand English. (ECF No. 23 at 2–3.)

Since the time he was arrested, Petitioner has been held in ICE custody—first in Maryland, now in Louisiana. (*See* ECF No. 1 ¶ 11; ECF No. 14-1 at 2.) He alleges that he filed his habeas petition before he was moved out of this District, against one or more of his immediate custodians. (ECF No. 1 ¶ 15.) For that reason, the Court continues to conclude that jurisdiction over this action is proper. (*See* ECF No. 9 at 2–3 (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 411 (2004)).)

Over the last month, Petitioner sought two temporary restraining orders. (ECF Nos. 7, 10.) The Court denied both requests, on the ground that the relief they sought—an injunction against Petitioner's removal to Mexico or any other "third country"—was duplicative of relief ordered by the District of Massachusetts in *D.V.D: v U.S. Department of Homeland Security*, --- F. Supp. 3d ---, Civ. No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (*See* ECF No. 9 at 1–2; ECF No. 17 at 2–4.) On June 23, 2025, the Supreme Court stayed that order. *See DHS v. D.V.D.*, 606 U.S. ---, 2025 WL 1732103, at *1 (June 23, 2025). This Court continues to conclude that claims related to the destination of Petitioner's removal are more appropriately resolved in the District of Massachusetts. (*See* ECF No. 9 at 1–2; ECF No. 17 at 2–4.)

2

The Court previously denied the Government's motion to dismiss this case, given that Petitioner's pleadings and subsequent arguments raised the possibility of fundamental defects with respect to his detention. (ECF No. 17 at 4–5.) The Court ordered multiple rounds of briefing on those issues, and it set in a hearing for June 24, 2025. (*See id.* 4–6; ECF No. 21 at 3–5.) Those issues are the subject of this Memorandum and Order.

## II.    ANALYSIS

Petitioner's argument for release turns on the presence of various alleged defects in his detention. The most significant of these—and the one Petitioner spends nearly all his latest brief discussing—is that the Government purportedly lacked power, under the immigration statutes, to arrest Petitioner when it did: in mid-May 2025, months after his so-called "removal period" expired. (*See* ECF No. 23 at 3–9.) Petitioner also suggests, in passing, that the process by which ICE has detained and plans to remove him contains various other procedural mistakes, including ICE's failure to translate documents into a language Petitioner can understand, (*see id.* at 2–3), its possible failure to serve Petitioner with certain documents, (*id.* at 2–3 & nn.1–2), and its alleged failure to conduct a review of Petitioner's detention, (*see id.* at 12).

The Court turns first to the removal-period argument. Under the immigration statutes, "[e]xcept as otherwise provided . . . , when an alien is ordered removed, the Attorney General shall remove the alien . . . within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). That window is called the "removal period." *Id.* In relevant part, the removal period begins on "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). Here, that date was in early December 2024; both sides agree that the removal period expired in early March 2025. (ECF No. 22 at 2; ECF No. 23 at 2.) After the removal period ends, the statute describes two options for an alien: supervised release, *see* 8 U.S.C. § 1231(a)(3), or, for aliens who fall within three specific categories, continued detention, *see id.* § 1231(a)(6). Both sides appear to agree that Petitioner fits

into the first of those latter three categories: aliens who are "inadmissible" under 8 U.S.C. § 1182. (*See* ECF No. 22 at 4 (citing 8 U.S.C. § 1182(a)(6)(A)(i), which deems "inadmissible" aliens who are present in the United States "without being admitted or paroled" or who "arrive[d] . . . at any time or place other than as designated by the Attorney General")); ECF No. 23 at 4.) Although an alien detained beyond the removal period may not be detained indefinitely, he "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The Supreme Court has held that six months of detention, inclusive of the removal period, is "presumptively reasonable." *Id.*

As Petitioner observes, the relevant statutes and regulations speak of the removal period as a point at which an alien's custody may be *continued*, suggesting that custody would (or at least should) have begun earlier. *See, e.g.*, 8 U.S.C. § 1231(a)(6), (a)(1)(C); 8 C.F.R. § 241.4(a), (d), (f), (g)(5)(i). Petitioner also notes, rightly, that the law describes the Government's removal-period duties in mandatory terms: "shall remove," 8 U.S.C. § 1231(a)(1)(A); "shall detain," *id.* § 1231(a)(2)(A); "will be taken into custody," 8 C.F.R. § 241.3(a). *See Xi v. INS*, 298 F.3d 832, 840 n.6 (9th Cir. 2002) (noting a "statutory duty to effect the physical removal of individuals ordered removed within the statutorily specified 90-day 'removal period'").

Even so, Petitioner's removal-period argument is unpersuasive. A governmental duty to enforce the law with dispatch does not necessarily create a private right based on a failure to do so. *See, e.g.*, 8 U.S.C. § 1231(h) ("Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). While some courts have identified such a right in this context, *see, e.g., Cordon-Salguero v. Noem*, Civ. No. GLR-25-1626, ECF No. 20 (D. Md. June 18, 2025); *Ulysse v. DHS*, 291 F. Supp. 2d 1318, 1326 (M.D. Fla. 2003), others have

4

not, *see, e.g., Jimenez v. Cronen*, 317 F. Supp. 3d 626, 652, 656–57 (D. Mass. 2018) (granting relief based on ICE's long-running failure to conduct custody reviews, not because of the removal period's expiration). Working within an area of law that affords the Executive Branch tremendous discretion, this Court is not persuaded that expiration of the removal period wholly divests the Government of power it otherwise holds to arrest an alien—particularly where the statute, regulations, and the Supreme Court have all unambiguously sanctioned post–removal period detention. *See, e.g.*, 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.4(a); *Zadvydas*, 533 U.S. at 701; *cf.* 8 C.F.R. § 241.4(l)(2) (permitting the Government to revoke an alien's release when, "in the opinion of the revoking official," "[i]t is appropriate to enforce a removal order or to commence removal proceedings" or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate" (among other situations)).

Even if the Government *did* violate the immigration statutes and regulations, the Court is not persuaded that habeas relief is appropriate—at least not yet. "[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995); *see* 28 U.S.C. § 2243 (requiring courts to "dispose of [a habeas] matter as law and justice require"). "[W]hen the judicial power to issue habeas corpus properly is invoked[,] the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, *if necessary*, an order directing the prisoner's release." *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (emphasis added). But "not every procedural misstep or difficulty raises anything like a constitutional difficulty." *Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008). And while habeas is a proper vehicle "to challenge detention that is without statutory authority" or violative of the Constitution, it is not a proper vehicle for vindicating every procedural error the Government may have committed along the way. *See Zadvydas*, 533 U.S. at 687–88. That sort of relief can be sought administratively, *see, e.g.*, 8 U.S.C. § 1003, or in certain, specified federal courts, particularly the courts of appeals, *see, e.g.*,

5

*id.* § 1252. For that reason, in assessing Petitioner's right to the habeas remedy, the Court looks to the overall reasonableness of his detention, not to whether the Government was flawless in its execution. *See Zadvydas*, 533 U.S. at 682; *Boumediene*, 553 U.S. at 793–94.

Petitioner's detention has not risen to the level of open-ended, *ultra vires*, or otherwise unreasonable detention for which release—the only relief he seeks—is an appropriate remedy. He has been detained for six weeks, well short of the six-month "presumptively reasonable" period of custody. *See Zadvydas*, 533 U.S. at 701. To the extent the Government violated the law by failing to arrest Petitioner within the removal period, such an error does not go to the Government's basic power to detain him, an alien without lawful immigration status, subject to a final order of removal. *See supra.* And the other errors he suggests—lack of a Spanish-language translation, a custody review, and/or service of certain documents—are, at this early stage, still remediable by the provision of any process he may have been denied, rather than by release alone. *Contra Jimenez*, 317 F. Supp. 3d at 656–57.[1] To be clear: Petitioner is entitled to due process of law in the context of his detention and removal proceedings. *Trump v. J.G.G.*, 604 U.S. ---, 145 S. Ct. 1003, 1006 (2025). And his detention may eventually ripen into one warranting release from custody. But as yet, it has not.

Accordingly, it is ORDERED that:

1.    The Government's request to dismiss Petitioner I.V.I.'s Petition for a Writ of Habeas Corpus, (ECF No. 22 at 13), is GRANTED. The Petition, (ECF No. 1), is DENIED WITHOUT PREJUDICE to Petitioner's refiling of a later petition for the same or similar relief in an appropriate court.

---

[1] Petitioner himself also casts these alleged errors as something of an afterthought to the removal-period issue, leaving the Court without much basis to address them even if Petitioner had sought relief short of release. (*See* ECF No. 23 at 12 ("The issue . . . is not whether the Government has complied with its duty to review Petitioner's custody . . . . Fundamentally, the issue here is whether the Government has any current right to detain Petitioner at all."); *id.* at 2–3 nn.1-3 (alleging, in footnotes, possible service and translation errors).)

2.    The Government's request to transfer this case to the Eastern District of Louisiana, (ECF No. 22 at 13), is DENIED.

3.    The Court's earlier stay of Petitioner's removal from the United States, (*see* ECF No. 9 at 2), is VACATED. But this vacatur is itself STAYED for one week, through July 8, 2025. During that time, Petitioner shall not be removed from the United States.

4.    The Clerk is DIRECTED to CLOSE this case.

DATED this ⁄ day of July, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

7